UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Carlson Companies, Inc., a Minnesota corporation; and Carlson Hotels Worldwide, Inc., a Minnesota corporation,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>James Rozell, an individual,<br><br>　　　　　Defendant. | Case No.: _____<br><br>**COMPLAINT** |

Plaintiffs, Carlson Companies, Inc. ("CCI") and Carlson Hotels Worldwide, Inc. ("Carlson Hotels")(collectively "Carlson"), for their Complaint against James Rozell ("Rozell"), state and allege as follows:

## THE PARTIES

1.　CCI is a Minnesota corporation with its principal place of business and corporate headquarters at 701 Carlson Parkway, Minnetonka, Minnesota.

2.　Carlson Hotels is a Minnesota corporation with its principal place of business and corporate headquarters at 701 Carlson Parkway, Minnetonka, Minnesota. Carlson Hotels is wholly owned by Carlson Hospitality Group, Inc., a Minnesota corporation with its principal place of business and corporate headquarters at 701 Carlson Parkway, Minnetonka, Minnesota, which is wholly owned by CCI.

3.　Rozell is an individual who resides in the State of Wisconsin.

## JURISDICTION AND VENUE

4.　This action arises under the United States patent laws, and under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202. There is an actual controversy between Carlson and Rozell arising under the United States patent laws. This Court has subject matter

81472147.1

jurisdiction under the provisions of 28 U.S.C. § 1331 and § 1338, and § 1367, and under 28 U.S.C. § 1332 because this action is between citizens of different states and the value of the rights Carlson seeks to protect, together with money damages as proven at trial, exceeds $75,000, excluding interest and costs.

5.    This Court has personal jurisdiction over Rozell because personal jurisdiction over Rozell comports with the United States Constitution and Minnesota Constitution and because, among other things, the claims against Rozell arise out of his employment at Carlson in Minnesota, his various contacts with Minnesota arising out of his employment at Carlson, and because he has committed unlawful acts that give rise to these claims in Minnesota.

6.    Venue is proper in this judicial district under 28 U.S.C. § 1391. Among other things, CCI and Carlson Hotels are Minnesota corporations and Minnesota is the judicial district in which a substantial part, if not all, of the events giving rise to the claims occurred.

## FACTS

A.    Carlson's Business

7.    CCI is a global hospitality and travel company. CCI provides a broad range of travel and hospitality services. CCI's businesses include Carlson Hotels and Carlson Restaurants (whose brands include T.G.I. Friday's® and Pick Up Stix®).

8.    Carlson Hotels is in the hotel business. Carlson Hotels is a global hotel company with approximately 1,060 locations in 77 countries. Its brands include: Radisson,® Country Inns & Suites By Carlson,℠ Park Inn,® and Park Plaza.®

9.    Carlson Hotels is a subsidiary of Carlson Hospitality Group, Inc. Other subsidiaries of Carlson Hospitality Group, Inc. include Carlson Hospitality Corporation and Carlson Restaurants Worldwide, Inc.

B.  Rozell's Employment At Carlson

10. On or about March 15, 2006, Rozell accepted Carlson's offer of employment as the Senior Director of Revenue Management at Carlson Hotels' corporate headquarters in Minnesota, which became effective on his start date of April 17, 2006.

11. Further, on April 17, 2006, as a condition of employment with Carlson and in consideration of compensation and continued employment by Carlson, Rozell signed a Carlson Conditions of Employment agreement, which is attached to this Complaint as Exhibit 1 and incorporated herein by reference. Among other things, in his Conditions of Employment agreement Rozell agreed to the following:

> Intellectual Property. I will promptly disclose to Carlson all product, process, hardware and software inventions, ideas, designs, computer programs and related documentation, other works of authorship, and mask works (hereafter "Developments") relating to its business which I make individually or jointly with others, even if on my time, while I am employed by Carlson. For a period of six months after termination of my employment, I will disclose to Carlson such Developments, if resulting from work performed by me for Carlson. I will assign (and I do hereby assign) all my interest in such Developments to Carlson, and upon request and at the expense of Carlson, I will do all other acts reasonably necessary to assist it in obtaining and enforcing rights in Developments in any and all countries. This paragraph 2 does not apply to an invention for which no equipment, supplies, facility or trade secret information of Carlson was used and which was developed entirely on my own time, and (1) which does not relate (a) directly to the business of Carlson, or (b) to Carlson's actual or anticipated research or development, or (2) which does not result from any work performed by me for Carlson. It also does not apply to my prior inventions or works which are listed below. I acknowledge that the obligations of this paragraph 2 shall be in effect whether or not I receive or am considered for the award of any additional compensation for Developments.

*See* Exhibit 1, paragraph 2.

12. In addition, Rozell's Conditions of Employment agreement states: "This agreement does not apply to developments such as inventions and works of authorship in which you have an interest and which were made before your employment with Carlson. To clearly

establish any such developments, list them below by titles and approximate dates." Rozell did not list and/or disclose any such developments. *See* Exhibit 1.

13.     Rozell also agreed to the following in his Conditions of Employment agreement:

> <u>Confidential Information</u>. In my employment by Carlson Companies, Inc., or any of its subsidiaries or affiliates (all of which are referred to below as "Carlson") and in the course of my duties, I will acquire confidential and secret data, information and knowledge ("Information") concerning Carlson, Carlson's customers and other third parties in various phases of their businesses. I understand that I am being placed in a position of trust with respect to such information. This includes, but is not limited to, confidential information of and about customers and suppliers; customer lists, names of customer contacts and personnel, customer contracts (including, but not limited to, pricing and termination dates thereof) and purchase information; policies and procedures for estimating charges and billing customers; computer programs, mailing and other address lists, methods of designing computer programs for accounting and management information systems, techniques and formulas such a [sic] methods for cost unit measurement; salary, bonus and compensation policies and amounts, employment history and related information regarding company employees; and other data, information and knowledge of whatever nature or form which at the time or times concerned is not generally made available by Carlson to anyone, except in an employment other business relationship with Carlson. I agree to hold all the Information in a fiduciary capacity and in strictest confidence. During neither the period of my employment by Carlson nor at any time thereafter will I reveal, communicate or divulge any Information to any person, firm, corporation, other entity or organization other than as Carlson specifically directs. I will not disclose to Carlson or induce Carlson to use the confidential and proprietary information of others.
>
> <u>Carlson Materials</u>. Upon Carlson's request at any time and upon termination of my employment with Carlson for whatever reason, whether or not voluntary on my part, I will deliver to Carlson all Developments, records, data, memoranda, manuals, notes and all other things and material of any nature (all of which, in whatever term, is included below in the term "Material"), including all copies thereof, which are in my possession or control, which I acquire or create in my employment by Carlson and which relate to Carlson's property. All Material created by me in the course of my employment or during my employment which relates to Carlson's business shall be owned in all respects by Carlson unless Carlson specifically agrees in writing to the contrary. I will not remove or cause to be removed or sent from Carlson's premises any Material, or any copies, summaries or extracts therefrom, except for the delivery thereof to (or for) Carlson's customers in the ordinary course of Carlson's business or for reasonable periods of time, with my supervisor's express permission, to perform my duties for Carlson. Nor will I make any copies, summaries or extracts therefrom except

as needed for such purpose. I agree that, if permitted by applicable law, monies payable to me by Carlson may be withheld pending my return of all Materials and all existing copies, summaries and extracts therefrom that I have made or possess. I also agree that monies I owe Carlson at the time my employment terminates may be deducted from monies then owed to me by Carlson.

*See* Exhibit 1, paragraphs 1 and 3.

14. As the Senior Director of Revenue Management, Rozell's responsibilities included, among other things, the following with respect to all Carlson Hotels brands:

(a) Maximizing the revenue and profitability of Carlson Hotels by defining strategic pricing philosophies which maximize profitability and creating tools, systems and training programs to maximize yield and revenue management;

(b) Developing and directing the implementation of revenue enhancement and pricing strategies, including: defining strategic pricing philosophies for hotels which maximize revenue and profitability; working with Marketing Directors and Vice President to maximize revenues of hotels' marketing initiatives; incorporating input from hotels, strategic alliances, hotel teams, competitive analysis, and customer research; working with Strategic Alliances to develop and implement strategies on a global basis; directing and providing ongoing evaluation/consultation for Managed Hotels & Resorts revenue management practices; developing and providing tools and consultation to the field teams for implementation of the strategies at hotel-level;

(c) Serving as technical liaison on revenue enhancement tools and processes, including: analyzing forecasting and yield management tools in conjunction with technical groups and recommending new system standards; defining desired business outcomes for revenue enhancement processes/tools and representing Carlson Hotels on technical developments; providing input and direction regarding changes to reservation systems required to maximize revenue and yield management; ensuring that revenue enhancement framework and

process are incorporated into Carlson Hotels' systems by working closely with technical groups on hotel and reservation system upgrades; analyzing and being held accountable for process and tool performance and making recommendations for upgrades/enhancements as needed.

(d) Developing and overseeing revenue enhancement training programs (such as Pricing, Forecasting, Yield Management, Revenue Management), including: Evaluating hotels and developing programs focusing on areas with most potential for results; developing training programs working with field teams and Director of Field Education; working in conjunction with Strategic Alliances to extend training programs on global basis; analyzing, defining and developing training programs appropriate for Carlson Hotels' corporate staff regarding revenue enhancement strategies;

(e) Serving as revenue enhancement/pricing expert for Carlson Hotels, including: continually monitoring and analyzing the competitive environment, making improvements to Carlson Hotels revenue enhancement techniques, and keeping Carlson Hotels' corporate staff informed on competitive approaches; serving as subject matter expert for field teams and consulting with individual hotels;

(f) Monitoring, analyzing and directing reporting on the revenue enhancement performance, including: developing measurement criterion and processes to track revenue enhancement performance of Carlson Hotels and individual properties; monitoring and analyzing measures and educating Carlson Hotels staff on trends and potential problem areas; developing system and hotel reporting; and

(g) Developing and implementing marketing strategies in conjunction with Marketing Executive Team which delivers value-added business.

C.  **While Employed at Carlson, Rozell Filed a Secret Patent Application Relating to Carlson's Business**

15.  In April 2010, Carlson management met with Rozell to discuss his employment obligations at Carlson. During that meeting, Rozell informed Carlson that he recently filed a patent application that he claimed related to a separate company started by Rozell named Hotel Compete L.L.C. Rozell agreed to provide Carlson a copy of the patent application so that Carlson could review it as part of its review of Rozell's employment obligations.

16.  Rozell provided Carlson three documents that he purported to be his patent application.

17.  Based on the three documents provided to Carlson by Rozell, upon information and belief, on October 12, 2009 and while employed by Carlson, Rozell filed a provisional patent application with the United States Patent and Trademark Office ("the 2009 patent application").

18.  Prior to April 2010, Rozell never disclosed to Carlson the 2009 patent application, any and all related continuations or divisions, or any product, process, hardware and software inventions, ideas, designs, computer programs, and related documentation, or other works of authorship, related to the 2009 patent application (collectively "the 2009 patent application, and related IP").

19.  Rozell used Carlson equipment, supplies, facilities, and/or confidential or trade secret information in making and/or preparing the 2009 patent application and related IP, and the 2009 patent application and related IP and its content itself is Carlson confidential information and Material.

D.  The 2009 Patent Application, and Related IP, Was Automatically Assigned To Carlson By Operation Of Law Through Rozell's Conditions Of Employment Agreement

20. The 2009 patent application, and related IP, constitute a "Development" that is subject to Rozell's Conditions of Employment agreement.

21. The 2009 patent application, and related IP, were made and/or prepared while Rozell was employed by Carlson.

22. The 2009 patent application, and related IP, relate directly to Carlson's business.

23. In Rozell's Conditions of Employment agreement, Rozell agreed to assign, and in fact did assign by operation of law, all interest in the 2009 patent application, and related IP, to Carlson.

24. On April 26, 2010, Carlson informed Rozell that Carlson owns all interest in the 2009 patent application, and related IP. Rozell refused to acknowledge the automatic assignment and Carlson's ownership, denied that Carlson has any ownership rights over the 2009 patent application, and related IP, and refused to turn over the prosecution of the 2009 patent application, and related IP, to Carlson. To date, upon information and belief, Rozell continues to use, and control the prosecution of, the 2009 patent application, and related IP.

## CAUSES OF ACTION

### COUNT ONE
### DECLARATORY JUDGMENT

25. Carlson hereby restates and realleges the allegations set forth in paragraphs 1-24.

26. Rozell's Conditions of Employment agreement is a valid and enforceable present assignment.

27. Rozell's Conditions of Employment agreement operates as a present, or automatic, assignment of all interest in the 2009 patent application, and related IP, to Carlson.

28.     No other limitations and/or restrictions in Rozell's Conditions of Employment agreement apply to avoid the automatic assignment.

29.     Rozell has refused to acknowledge the automatic assignment and Carlson's ownership, and has denied that Carlson has any ownership rights over the 2009 patent application, and related IP.

30.     Carlson is entitled to a declaration that it owns all right, title and interest in the 2009 patent application, and related IP, and to the subject Carlson confidential information and Material.

## COUNT TWO
## BREACH OF CONTRACT

31.     Carlson hereby restates and realleges the allegations set forth in paragraphs 1-30.

32.     Rozell's Conditions of Employment agreement is a binding contract between Carlson and Rozell, supported by consideration.

33.     Rozell's Conditions of Employment agreement obligated him to, among other things, "promptly disclose to Carlson all product, process, hardware and software inventions, ideas, designs, computer programs and related documentation, other works of authorship, and mask works (hereafter "Developments") relating to its business which I make individually or jointly with others, even if on my time, while I am employed by Carlson."

34.     Rozell's Conditions of Employment agreement further states: "I will assign (and I do hereby assign) all my interest in such Developments to Carlson, and upon request and at the expense of Carlson, I will do all other acts reasonably necessary to assist it in obtaining and enforcing rights in Developments in any and all countries."

35.     As described above, Rozell's Conditions of Employment agreement placed additional obligations on Rozell with respect to Carlson confidential information and Material.

36. Rozell has breached, and will further breach, those terms of his Conditions of Employment agreement by, among other things: failing to promptly disclose the 2009 patent application, and related IP, to Carlson; refusing to acknowledge the automatic assignment and Carlson's ownership of the 2009 patent application, and related IP; denying that Carlson has any ownership rights over the 2009 patent application, and related IP; revealing, communicating, and/or divulging Carlson confidential information, to others; failing to deliver to Carlson all Material; and making use, copies, summaries or extracts of such Material, and removing, and/or causing to be removed from Carlson such Material.

37. Carlson has no adequate remedy at law for Rozell's breach and continuing breach of his Conditions of Employment agreement. As a direct result of Rozell's actions, and unless restrained by this Court, Carlson has been and will be irreparably injured by Rozell's breach and continued breach of his Conditions of Employment agreement.

38. In addition, as a direct result of Rozell's actions, Carlson has sustained damage in excess of $75,000, the actual amount to be fully determined at trial.

## COUNT THREE
## BREACH OF DUTIES

39. Carlson hereby restates and realleges the allegations set forth in paragraphs 1-38.

40. As an employee of Carlson, Rozell owed Carlson certain duties, including the fiduciary duties of confidentiality, loyalty, good faith, and due care.

41. Rozell breached these duties by, among other things: breaching his Conditions of Employment agreement; failing to promptly disclose the 2009 patent application, and related IP, to Carlson; refusing to acknowledge the automatic assignment and Carlson's ownership of the 2009 patent application, and related IP; denying that Carlson has any ownership rights over the 2009 patent application, and related IP; revealing, communicating, and/or divulging Carlson

confidential information, to others; failing to deliver to Carlson all Material as required by his Conditions of Employment agreement; and making use, copies, summaries or extracts of such Material, and removing, and/or causing to be removed from Carlson such Material, in violation of his Conditions of Employment agreement.

42. Carlson has no adequate remedy at law for Rozell's breach of duties. As a direct result of Rozell's actions, and unless restrained by this Court, Carlson has been and will be irreparably injured by Rozell's breaches.

43. In addition, as a direct result of Rozell's actions, Carlson has sustained damage in excess of $75,000, the actual amount to be fully determined at trial.

**WHEREFORE**, Carlson prays for an entry of judgment as follows:

A. A declaration that Carlson owns all right, title and interest in the 2009 patent application, and related IP, and to the subject Carlson confidential information and Material.

B. Granting preliminary and permanent injunctive relief requiring Rozell:

(1) To transfer to Carlson the right and ability to prosecute the 2009 patent application, and related IP,

(2) To sign a recordable confirmation of assignment of the 2009 patent application, and related IP, for filing with the United States Patent Office and/or other governmental authorities,

(3) To cease any and all use and/or disclosure of any Carlson confidential information and/or Material, including the 2009 patent application, and related IP,

(4) To immediately return to Carlson all copies of Carlson confidential information and/or Material, including the 2009 patent application, and related IP,

(5) To represent and warrant that he has not assigned, or attempted to assign,

any right, title or interest in the 2009 patent application, and related IP, and any other Carlson confidential information and/or Material, to any other person or entity.

C. Awarding to Carlson and assessing against Rozell damages in an amount to be determined at trial in excess of $75,000 as well as an equitable amount to be determined by the Court in its discretion;

D. Awarding to Carlson and assessing against Rozell interest, costs, disbursements, and reasonable attorneys' fees incurred in connection with this action; and

E. Awarding to Carlson and assessing against Rozell such other and further relief the Court deems just, equitable, and proper.

DATED: June 30, 2010                    **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By:  /s/ Christopher A. Seidl
     Martin R. Lueck (MN# 155548)
     Christopher A. Seidl (MN# 313439)

     2800 LaSalle Plaza
     800 La Salle Avenue
     Minneapolis, MN 55402
     Telephone: (612) 349-8500
     Facsimile: (612) 339-4181

**Attorneys for Plaintiffs Carlson Companies, Inc. and Carlson Hotels Worldwide, Inc.**